# RONAN, TUZZIO & GIANNONE

### A Professional Corporation
#### Attorneys at Law

James M. Ronan, Jr.
Robert A. Giannone ᐃ
Michael K. Tuzzio
Mary Ann Nobile Wilderotter ᐃ
Linda A. Olsen
Gregory W. Boyle
Anthony M Tracy
Lauren H. Zalepka*
Michael E. McGann
Henry P. Butehorn ᐃ
Edward H. Kerwin
Michael B. Kelly ᐃ

ONE HOVCHILD PLAZA
4000 ROUTE 66
TINTON FALLS, NEW JERSEY 07753-7308
(732) 922-3300
FAX (732) 918-8505

Marie A. Accardi
Til J. Dallavalle ᐃ
John M. Hockin, Jr.
Colleen M. Panzini

ᐃNJ & NY Bars
*NJ & PA Bars

June 10, 2010

**_VIA NEW JERSEY LAWYERS SERVICE_**

Chambers - **_COURTESY COPY_**
Judge Freda Wolfson
United States District Court
District of New Jersey, Courtroom 5E
Clarkson S. Fisher Federal Bldg. & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> RE:   E/O Laura Lomando v. Riverview Medical Center, et al
> Our File No.:  155-8224 MAN/HPB
> Docket No.:  **3:08-CV-04177-FLW-TJB**
> **_Motion Returnable:   July 6, 2010_**

Dear Judge Wolfson:

As you are aware, our office filed a Motion for Summary Judgment on behalf of defendant, Riverview Medical Center, in reference to the above matter, which is returnable July 6, 2010. Please accept the following in lieu of a more formal submission as a supplement to said Motion.

Please be advised that on June 8, 2010, we received a report from plaintiff's expert, James D. Hayes, II, M.D., a copy of which is attached hereto. While the report does not criticize the care rendered by Riverview Medical Center, and as such does not impact or alter that previously put forth in the moving papers, we felt it necessary and appropriate to advise Your Honor of the report. The report is critical of co-defendant physicians, in particular Dr. Timothy Sullivan.

However, despite the report, Defendant Riverview Medical Center continues to rely upon all arguments set forth in its prior submission. Despite the enclosed report Plaintiff cannot establish a prima facie case against Riverview Medical Center. For this reason and

E/O Lomando v. Riverview Medical Center, et. als.
Docket No.: 3:08-CV-04177-FLW-TJB
June 10, 2010
Page - 2 -

those contained in the Motion papers previously submitted, it is respectfully requested that defendant, Riverview Medical Center's Motion for Summary Judgment be granted, dismissing Plaintiff's Complaint and all cross-claims against said Defendant, with prejudice, as a matter of law.

Thank you very much.

Respectfully submitted,

TIL J. DALLAVALLE

TJD
Enclosure
cc:     Anthony A. Lenza, Jr., Esq. (w/o enc.)
        Sean Buckley, Esq. (w/o enc.)
        James H. Moody, Esq. (w/o enc.)
        Kenneth M. Brown, Esq. (w/o enc.)
        Karen Shelton, Esq. (w/o enc.)

P-588
Anthony A. Lenza, Jr., Esq.
Law Office of Carl M. Erman, Esq.
618 Newark Avenue
Elizabeth, NJ 07028
alenza@amabile-erman.com
(908) 282-0505
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEW JERSEY

----------------------------------X
INES LOMANDO, as Administratrix Ad
Prosequendum of the Estate of          CIVIL NO. 3:08-CV-04177-FLW-TJB
LAURA LOMANDO, deceased,

                 Plaintiff,

       -against-                   **EXPERT WITNESS DISCLOSURE**
                         **FOR JAMES D. HAYES, II, M.D.**

THE UNITED STATES OF AMERICA,
STEPHANIE REYNOLDS, M.D., TREVOR
TALBERT, M.D., DAVID HYPPOLITE,
M.D., PARKER FAMILY HEALTH CENTER,
RIVERVIEW MEDICAL CENTER, EMERGENCY
PHYSICIAN ASSOCIATES NORTH JERSEY, PC,
JOHN DOE #1 through #5, MARY MOE #1 through
#5, and XYZ CORPORATION #1 through
#5 (fictitious names representing
unknown physicians, nurses,
technicians, medical groups, medical
facilities and/or other medical
providers who participated in the
medical care of the plaintiff) jointly,
severally and in the alternative,

                 Defendants.
----------------------------------X
TO:   Martin J. McGreevy, LLC
      Attn: Teresa Gierla, Esq.
      1 Industrial Way West
      West Ridge, Building A
      Eatontown, NJ 07724
      Attorneys for Defendant(s)
      DAVID HYPPOLITE, M.D.

Ronan, Tuzzio & Giannone
Attn: Henry Butehorn, Esq.
4000 Route 66
Tinton Falls, NJ 07753-7308
Attorneys for Defendant(s)
RIVERVIEW MEDICAL CENTER

United States Attorney
Attn: Karen Shelton, Esq.
402 East State Street, Room 430
Trenton, NJ 08608
Attorneys for Defendant(s)
THE UNITED STATES OF AMERICA

Orlovsky, Moody, Schaaf & Gabrysiak
Attn: James Moody, Esq.
187 Highway 36
West Long Branch, NJ 07764
Attorneys for Defendant(s)
PARKER FAMILY HEALTH CENTER

Buckley & Theroux, LLC
Attn: Tess Kline, Esq.
932 State Road
Princeton, NJ 08540
Attorneys for Defendant(s)
STEPHANIE REYNOLDS, M.D., TREVOR
TALBERT, M.D., and EMERGENCY
PHYSICIAN ASSOCIATES NORTH JERSEY, PC


PLEASE TAKE NOTICE that plaintiff hereby provides the following information pursuant to FRCP Rule 26(a)(2)(B):

1. James D. Hayes, II, M.D. has been retained as an expert in the fields of otolaryngology, head and neck surgery.

2. A copy of Dr. Hayes's expert report is attached hereto.

3. A copy of Dr. Hayes's CV which includes publications is attached hereto.

2

4.  A copy of Dr. Hayes's testimony history is attached hereto.

5.  Dr. Hayes has charged $4,850.00 for review and preparation of his report.  He charges $300/hour.

Dated: May 26, 2010

CARL M. ERMAN, ESQ.
Attorney for Plaintiff

ANTHONY A. LENZA, JR. (AL2680)
ALENZA@AMABILE-ERMAN.COM

3

P-S8P AAT
5/27/10

Lomando Expert report

Please accept this as my Expert Report on the case of Laura Lomando.

I am a Board Certified Otolaryngologist with 28 years of practice of Otolaryngology and Head and Neck Surgery. The opinions expressed herein are based on my cumulative education, many years of practice and careful reading of the documents that were presented to me. All opinions should be considered as rendered within a reasonable degree of medical certainty and are dependent on my knowledge of local, regional and national practice. I reserve to myself the right to change these opinions should new information be presented to me.

I have reviewed the following records to form these opinions:

1. Report of the Monmouth County Medical Examiner ME#13/06/0891

2. The medical record of Laura Lomando of The Parker Family Health Clinic

3. The deposition of Diane L. Helmer, M.D. of July 10,2009

4. The medical record of Laura Lomando of Riverview Medical Center

5. The Patient History of Laura Lomando of Eckerd Drugs

6. The medical record of Laura Lomando of Lincroft Oral and Maxillofacial Surgery

7. The medical record of Laura Lomando of Allergy and Asthma Center

8. The medical profile print of Laura Lomando of Foodtown Pharmacy

9. The deposition of Mary Nicosia of September 11, 2009

10. The deposition of Timothy Sullivan, M.D. on August 28, 2009

11. The deposition of Zaven Ayanian, M.D. on June 19, 2009

12. The deposition of Ines Lomando on July 31, 2009

13. Photographs labeled August 2006, May 2006, and May/June 2006

1

Lomando Expert report

14. Billing records of Laura Lomando of Riverview Medical Center

15. The deposition of Trevor Talbert, M.D. on October 15, 2009

16. Pgs. 2291 and 2292 from Cancer Principles and Practice of Oncology, 6th edition, DeVita, Hellman and Rosenberg.

17. Burkitt's and Associated Lymphomas, Ariela Noy, M.D. pgs. 175-186

18. Lymphoma, Non-Hodgkin, Dunleavy, Kohler, Wilson

19. Chapter 117, Tumor Lysis Syndrome, pgs. 1187-1190

20. Chapter 67, Intermediate and High Grade Lymphoma, pgs. 648-659

21. Chapter 207, Lymphomas, pgs. 2596-2612.

22. The deposition of Theresa Biedenbach, P.A. on March 3, 2010.

23. The deposition of Haig Manassian, M.D. on December 2, 2009.

**Chronology and Narration of The Case**

**June 5, 2006** Ms. Lomando visited the Emergency Department of Meridian Health, **Riverview Medical Center** with a complaint of bilateral eye drainage and was treated for conjunctivitis and sinusitis. She was given a prescription for Amoxicillin 500 mg and Vigamox eye drops. I find no record of sinus images ordered or cultures of the eye discharge.

**June 7, 2006** Ms. Lomando returned to **Riverview Medical Center** complaining of abdominal cramps. She was seen by a Physician Assistant who noted that the facial pain had resolved and

2

Lomando Expert report

advised Ms. Lomando to stop taking the Amoxicillin and to finish the Vigamox. The presumptive diagnosis during this episode was a bad reaction to the Amoxicillin.

**June 29, 2006** Ms. Lomando returned to the **Riverview Medical Center** and is seen by another Physician Assistant. Her complaint is that the eye swelling and facial pressure has returned. A throat culture was performed and Ms. Lomando is given Keflex 500 mg qid and Mucinex. She was referred to the Parker Clinic for follow-up in 3-5 days.

**July 6, 2006** Ms. Lomando was seen at **Allergy and Asthma Center, P.C.** where a diagnosis of acute sinusitis is offered and she is advised to take Claritin, Nasonex and to consider changing antibiotics if not improved.

**July 18, 2006** Ms. Lomando registered at the **Parker Family Health Clinic.**

**July 24, 2006** Ms. Lomando had a History and Physical Exam at the **Parker Family Health Clinic.** The diagnoses of Exogenous Obesity and Depression are made and referrals made for a GYN exam and psychological counseling. Ms. Lomando refused TB testing.

**August 23, 2006** Ms. Lomando returned to the **Parker Family Health Clinic** stating that she had a one day history of a painful and tender area under the left jaw. The differential diagnosis included "submental lymphadenitis vs. submental salivary duct obstruction" and she was given a prescription for Amoxicillin and instructed to suck on sour lemon balls.

**August 28, 2006** Ms. Lomando returned to the **Parker Family Health Clinic** with the same complaints and no improvement. The antibiotic was continued for two weeks and she was instructed to "push fluids." The medical record notes "2 weeks if improving. If not resolved consider dental/ENT. Sooner if worse."

**August 30, 2006** Ms. Lomando was seen at an unidentified **Dental Clinic** with the same and worsening complaints. A panorex dental xray was taken and the pt. was referred to Lincroft Dental to be seen by an Oral Surgeon.

**August 31, 2006** Ms. Lomando was seen by John Frattellone, D.M.D. of **Lincroft Dental** who believed that she had "probable L suboral Sialoadenitis/Infection" but he also notes, "possible

3

Lomando Expert report

tumor secondary to infection. Dr. Fratellone increased her antibiotic to Augmentin and communicated to the unidentified Dental office that he wanted to get a CT scan of the area and that he would "follow-up with her in the next few days."

**September 3, 2006** Ms. Lomando returns to **Riverview Medical Center** Emergency Department with a complaint of "L lymph gland swelling X 2 wks." The history indicates "Mother brought her to the ER b/c afraid it's a tumor." The physical exam noted "+ swelling of L parotid gland. Mildly tender to palp. No erythema, no ecchymosis." The ER staff recommended continuation of the antibiotic and sialogogues and added Motrin 600 mg tid. The ER staff recommended a follow-up with an ENT in 2-3 d.

**September 9, 2006** Ms. Lomando returns to **Parker Family Health Clinic** and is seen by (I believe) **Dr. Timothy Sullivan**, an Otolaryngologist. Her complaints are not well documented but the physical exam reveals "1-2 cm lymph nodes L + R submental triangle and R axilla." The differential diagnosis was "1. Viral 2. R/O lymphoma etc." A monospot and T3 T4 was ordered "today". A comment was made that reads "Asper Bx PRN". No recommendation for follow-up is recorded.

**September 9, 2006** Ms. Lomando had a Complete Blood Count which showed no striking abnormalities. She also had a Monospot test which was negative and an Eryhthrocyte Sedimentation Rate (ESR) which was strikingly elevated at 67mm/hr (normal range 1-20 mm/hr.) An Epstein Barr Virus IGG/IGM study revealed that the IGG value was normal but the IGM value was almost four times normal indicating an early Epstein Barr virus infection.

**September 11, 2006** Ms. Lomando returns to the **Parker Family Health Clinic** and sees **Dr. Helmer** who notes "Pt. here for follow-up with her mother. Lt lesion increasing in size since Saturday. Pt. exhausted – febrile." The Physical exam reveals "+ persistent and increased L submental approximately 4 cm lesion. + palpable lymphadenopathy rt submental and lt submental. Approximately 1 cm rt axillary node. ? Increased liver edge.

Notation is made "Case discussed with Dr. Sullivan + Dr. Minassian. Next step is biopsy. Dr. Minassian to arrange + to call M. Nicosic at Parker."

**September 12, 2006** Notation in Lomando medical record of **Parker Family Health Clinic**

4

Lomando Expert report

indicating that the biopsy has been scheduled for September 25, 2006

**September 13, 2006** Ms. Lombardo is seen at **Allergy and Asthma Center, P.C. by Michael B. Sherman** who diagnoses "Subacute sinusitis vs. allergy" and who notes the positive EBV IgM. He prescribes a steroid nasal spray and instructs her to return to the Parker clinic for follow-up.

**September 15, 2006** Notation in the medical record of **Parker Family Health Clinic** indicating that Ms. Lomando had a fever of 103 to 104 F and was instructed to go to ER with complaints of lethargy, inability to ambulate and a stiff neck.

**September 15, 2006** Ms. Lomando is seen at the **Riverview Medical Center ER by Trevor Talbert, M.D.** Her sodium and carbon dioxide chemistry values were low. She was mildly anemic and her white blood cell count was low at 4.1 K (4.5 to 11.0). A monospot test was positive. Blood cultures were taken and did not grow. Ms. Lomando was aggressively rehydrated, given an anti-emetic and discharged. Dr. Talbert records a diagnosis of mononucleosis.

**September 16, 2006** Notation in the medical record of **Parker Family Health Clinic** that a follow-up phone call was placed to Ms. Lomando's mother and it was learned that Ms. Lomando did go to the ER and was advised that the biopsy was not necessary.

**September 18,2006** Notation in the medical record of **Parker Family Health Clinic** which is presumably another phone contact. It is noted that the patient was not eating and it was speculated that it may be due to the Motrin producing abdominal pain.

**September 18, 2006** Notation in the medical record of **Parker Family Health Clinic** which is presumably a phone contact between **Dr. Diana Helmer** and someone at the Lomando residence. This may have been an in-person contact of some kind since prescriptions were written for laboratory tests. Dr Helmer notes that "the fever is down, lymph nodes smaller, stomach upset – overall feels better." Dr. Helmer instructs the caller that Ms. Lomando needs to be re-evaluated and labs rechecked "Thursday". Dr. Helmer records, "If better and labs consistent with acute EBV – hold off on biopsy – if not better or labs inconsistent – proceed."

5

Lomando Expert report

**September 18, 2006** Notation of another presumed phone contact between nursing staff at **Parker Family Health Clinic** and Lomando residence in which it is recorded that Ms. Lomando cannot eat and is weak. The cell phone number of the Clinic is given to the caller and they are advised to return to the ED if symptoms "escalate".

**September 20, 2006** Notation in the medical record of **Parker Family Health Clinic** that a phone call was received from Ms. Lomando's mother stating that Ms. Lomando was unable to speak clearly and was having difficulty moving. This was discussed with Dr. Helmer who advised that Ms. Lomando go to the ER but there was no answer when nursing attempted to relay this advice to Ms. Lomando.

**September 20, 2006 at 7 PM** Ms. Lomando was admitted to **Riverview Medical Center** with a diagnosis of "Sepsis" on the service of **Dr. David Hyppolite.**

**September 21, 2006 at 9:35 PM** Ms. Lomando dies of "Acute Renal Failure, Acute Liver Failure, Respiratory Failure, Mononucleosis and possible Lymphoma."

**September 21, 2006** An autopsy was performed on the Body of Laura Lomando by the **Monmouth County Assistant Medical Examiner.** The final Cause of Death is listed as "complications of Non-Hodgkins Lymphoma".

## Deviations From The Standards of Care in the case of Laura Lomando

It is not necessary to know the final diagnosis to determine that there were substantive deviations in the standard of care rendered to Laura Lomando. It is, however, helpful to note at the beginning of this analysis that Burkitt's Lymphoma is an easily treated for of Non-Hodgkin's Lymphoma with a five year survival rate in excess of 90%.

The above chronology clearly indicates a rapid trajectory of a serious illness which was not diagnosed in a timely fashion. In this case, Drs. Timothy Sullivan, Diane Helmer and Trevor Talbert were all negligent in failing to order a biopsy of the rapidly growing masses in Ms. Lomando's neck.This failure to employ the resources necessary to diagnose the root cause of

6

this disease and to refer this patient to an Oncologist literally cost Ms. Lomando her life.

Dr. Timothy Sullivan is particularly responsible for the loss of Ms. Lomando's life in that he has the complete set of skills that beyond a reasonable degree of medical certainty could have provided the timeliness of the biopsy that would have lead to a course of chemotherapy that is certain to preserve her life. His failure to provide a biopsy that was consistent with the time course of the disease process caused her death as a direct result.

I am well acquainted with the culture and function of Free Clinics and I am an enthusiastic supporter of this movement. I have functioned as a medical and surgical specialist for Free Clinics in Cleveland, Ohio and in Binghamton, New York. My support for Free Clinics does not influence my opinion of the standard of care rendered to any patient. Specifically, I do not believe that any standard of care should be adjusted depending on the location where the care is rendered if the proprietors of that location identify themselves as a medical facility.

My opinion is clearly that the medical facility must observe the usual standards of care but also that any practitioner in that facility, paid or unpaid, part-time or full-time, must also hold him/herself to the standards of care they observe for their most valued patients in their usual practice locations.

My highest level of expertise is in the practice of Otolaryngology and Dr. Timothy Sullivan, a fellow Otolaryngologist, deviated from the standards of care in failing to refer Ms. Lomando for diagnosis and treatment in a timely fashion.

Despite including "R/O Lymphoma, etc" in his differential diagnosis on 9/9/06, Dr. Sullivan sent the patient off for some laboratory tests and recorded "Aspiration PRN". Although he apparently discussed the case with Dr. Helmer on 9/11/2006 and she arranged a biopsy, Dr. Sullivan did not take professional responsibility for scheduling that biopsy and reviewing the results in a timely fashion. In his deposition (page 81, lines 1-7), Dr. Sullivan stated, "- Lymphoma was right up there. I didn't need anything else, anywhere else, to raise my suspicion of Lymphoma. And it was lymphoma until proven otherwise as far as I was concerned if it wasn't mono."

If this was indeed Dr. Sullivan's belief the medical record does not reflect this adequately.

7

Lomando Expert report

Later in his deposition (page 87, lines 14-20) Dr. Sullivan states, "When I got the results of the lab work, lymphoma became my primary diagnosis. And then it was to establish the diagnosis not only of lymphoma, but of the cell type." Dr. Sullivan goes on to say (page 93, lines 2-5), "It was our responsibility to do as much as we could for the patient and to point them in the right direction."

On September 11, 2006 Dr. Sullivan had made the diagnosis of Lymphoma but failed to remain adequately involved in this case to direct the care of the patient. He was made aware of the tragic advice that Dr. Talbert had given to the patient (page 96, lines 21-22) "That she had mono and that she should cancel the biopsy." Yet, Dr. Sullivan merely relayed his displeasure to the Parker Family Health Clinic nurse instead of personally re-involving himself in the case.

This is an unacceptable deviation from the standard of care of any physician. To do "as much as we can for the patient", Dr. Sullivan had a professional responsibility to contact the patient and to bring his authority as a physician to bear to persuade the patient that his primary diagnosis was that she had cancer and that she needed to see an Oncologist as soon as possible and to have a biopsy without delay.

Dr. Sullivan states later in his deposition that after his instructions to Mary Nicosia, R.N. on September 11, 2006 that his next knowledge of the status of the patient is when he is informed that she had died. When asked (page 104, lines 3-7), "Doctor, if a patient is suspected of having lymphoma and a biopsy is recommended, can a physician admit a patient to a hospital and wait there until a biopsy is performed?", he answered (page 104, line 14-15), "Anything in this world is possible." At this point Dr. Sullivan suspected lymphoma as his primary diagnosis and it would have been safe, easy, indicated and timely to obtain a CT scan of the neck, thorax and abdomen to further confirm his diagnosis and to stage the disease. Such a CT scan could have been scheduled, performed and interpreted within 24 hours. He failed to do so.

Dr. Sullivan's flippant answer indicates that he knew what should have been done is exactly that – Ms. Lomando should have been called by Dr. Sullivan, fully informed of the gravity of the situation, admitted to the hospital, scanned and biopsied within a day or two of September 11, 2006. If Dr. Sullivan did not have admitting privileges he should have personally arranged for an equally qualified colleague to admit Ms. Lomando.

8

Lomando Expert report

Burkitt's Lymphoma and related lymphomas are unique forms of lymphoma in that it are so easily treated by minimally toxic chemotherapy that had Dr. Sullivan met the standard of care and acted on his professional responsibility at any time up to 24 to 48 hours before her death, Ms. Lomando would be alive today and grateful to him.

Burkitt's lymphoma is a rare disease in the United States but common in Africa. Since it is not uncommon for an Otolaryngologist in the Northeast USA to treat patients who have immigrated from Africa and since Burkitt's lymphoma or related, non-Hodgkins lymphomas do occur in the USA, it is well within the professional responsibility of an Otolaryngologist to be prepared to diagnose and treat this class of disease. Every Otolaryngology Resident Physician-in-Training is questioned repeatedly during residency about Burkitt's Lymphoma and other non-Hodgkin's lymphomas as  causes of neck masses . Dr. Sullivan himself testified as to the speed of enlargement of the lymph nodes (deposition page 23, lines 19-22) and this alone should have brought a rapidly growing lymphoma to his mind. With this trajectory of Ms. Lomando's disease, the standard of care is that Burkitt's Lymphoma and related, rapidly growing lymphomas ,should be prominent in the differential diagnosis. Dr. Sullivan, according to the standard of care, should have recognized that Burkitt's Lymphoma and related illnesses are fatal within weeks and he should have taken personal and professional responsibility for the diagnosis in accordance with that time frame.

Dr. Sullivan deviated from the standards of care by:

A) Failing to diagnose Non-Hodgkin's Lymphoma.

B) Failing to refer Ms. Lomando in a timely fashion

C) Failing to maintain adequate medical records that inform other medical and nursing professionals about the differential diagnoses and the necessary time frame for diagnosis and treatment.

These deviations from the standard of care of any Otolaryngologist directly caused the death of Laura Lomando.

James D. Hayes, M.D.

9

**Curriculum Vitae**


**James D. Hayes, II, M.D.**
1220 Murray Hill Rd.
Vestal, NY 13850

**Phone:**        607-217-5487
**Cell:**         607-761-2632
**Farm:**         570-278-1773
**Fax:**          607-217-5487

**E-mail:** DocHayesii@aol.com or
Knowsguy@aol.com

**Birthdate:**    December 17, 1950

**Birthplace:**   Philadelphia, Pennsylvania

**Home Address:**     1220 Murray Hill Rd.
Vestal NY 13850

**Marital Status:**    Divorced

**Children:**     James D. Hayes, III, Rebecca A. Hayes, John J. Hayes III

**Professional Training:**

| | |
|---|---|
| 1983-1987 | Resident, Otorhinolaryngology, Cleveland Clinic Foundation, Cleveland, Ohio |
| 1982-1983 | Intern, General Surgery, Cleveland Clinic Foundation, Cleveland, Ohio |
| 1978-1982 | Medical School, Case Western Reserve University, Cleveland, Ohio M.D. Degree |
| 1976-1978 | College, Ohio State University B.S. Zoology |
| 1973-1976 | Division Leading Petty Officer, Reactor Control Division, U.S.S. Whale (SSN-638), U.S. Navy Submarine Service |
| 1970-1973 | Electronics, Radar, Photography, Nuclear Power Engineering, Submarine Training, U.S. Navy |

## Licensure:

| | |
|---|---|
| 1983 | National Board of Medical Examiners |
| 1984 | State of Ohio |
| 1986 | State of New York |
| 1986 | Commonwealth of Pennsylvania |

## Employment

| | |
|---|---|
| 1987-2005 | Self Employed Private Practice of Otolaryngology |
| 2001-2004 | Part time Utilization Review, Lourdes Hospital, Binghamton, N.Y. |
| 2005-present | Medical Director, United Health Service, Johnson City, NY |
| 2005-2009 | ENT, Upstate ENT, Vestal, N.Y. |
| 2004-2010 | Program Director, Otolaryngology, Upstate Medical University |
| 2008-present | Coordinator, Ambulatory Surgery, Upstate Medical University |

## Academic Appointments:

| | |
|---|---|
| 1986-1987 | Chief Administrative Resident, Cleveland Clinic, Cleveland, Ohio |
| 1987-1999 | Clinical Instructor, Department of Otolaryngology, State University of New York, Syracuse Medical School |
| 1999-2010 | Clinical Associate Professor, Department of Otolaryngology, Upstate Medical School, Syracuse, New York |
| 1996-2003 | Visiting Lecturer, Broome Community College, Binghamton University, Cornell University |
| 2004-2010 | Program Director E.N.T., Upstate Medical University, Syracuse |

## Board Certification:

| | |
|---|---|
| 1987 | Diplomat, American Board of Otolaryngology, Head and Neck Surgery |
| 2004 | Accreditation as a Coroner, State of New York |

## Hospital Appointments:

| | |
|---|---|
| 2004-2010 | Administrative Chair of Oncology Committee, UHS |
| 2004-2010 | Chair of Tumor Board, UHS |
| 2004-2010 | Medical Director of Special Medical Projects,  United Health Services, Johnson City. N.Y. |
| 2001-2003 | Assistant to VPMA, Lourdes Hospital, Binghamton, N.Y. |
| 2001-2003 | Medical Director Case Management, Lourdes Hospital, Binghamton, N.Y. |
| 2002 | Interim Director Quality Services Division, Lourdes Hospital, Binghamton, N.Y. |
| 2002 | Coding and Compliance Advisor, Lourdes Hospital, Binghamton NY |

| | |
|---|---|
| 1987-2001 | Lourdes Hospital, Binghamton, N.Y. |
| 1987-2001 | United Health Services, Johnson City and Binghamton, N.Y. |
| 1987-1992 | Montrose General Hospital, Montrose PA. |
| 1992-1996 | Section Chief Otolaryngology, United Health Services, Johnson City, N.Y. |
| 1992-1996 | Surgical Quality Assurance Committee, United Health Services, Johnson City, N.Y. |
| 1993-1997 | Chairman, Medical Records Committee, United Health Services, Johnson City, N.Y. |
| 1993-1997 | Medical Executive Committee, United Health Services, Johnson City, N.Y. |
| 1994-1996 | Director, Sleep Lab, Lourdes Hospital, Binghamton, N.Y. |

**Elected/Appointed Offices:**

| | |
|---|---|
| 2004-2005 | Chair, Board of Censors, BCMS |
| 2003-2009 | Member, Board of NYSOPMC |
| 2001-2009 | Broome County Coroner |
| 2001 | Teller, Medical Society of the State of New York |
| 2001-2007 | Expert, NYSOPMC |
| 2000-2003 | Delegate, Medical Society of the Sate of New York |
| 2000-2004 | Board of Directors, TriCities Opera |
| 1999-2001 | President, Broome County Medical Society |
| 1999-2001 | President, Southern Tier Foundation for Medical Care |
| 1998-1999 | Chair, Board of Censors, BCMS |
| 1989-1991 | President, Sunrise Terrace Civic Association |

**Awards**

| | |
|---|---|
| 2007 | Outstanding National Cancer Liaison Physician, American College of Surgeons |

**Society Memberships:**

American Academy of Otolaryngology, Head and Neck Surgery
American Medical Association
Medical Society of New York State
Broome County Medical Society
The Christian Society of Otolaryngology – Head and Neck Surgery

**Committee Assignments:**

| | |
|---|---|
| 1987-1999 | Tumor Board, Lourdes Hospital |
| 1989-1990 | Laser Committee, Lourdes Hospital |
| 1991-1992 | Laser Task Force, United Health Services |
| 1994-1996 | Surgical Quality Assurance Committee, United Health Services |
| 1994-1996 | Operating Room Committee, Lourdes Hospital |

| | |
|---|---|
| 1996-2003 | Board of Censors, Broome County Medical Society |
| 1998-1999 | Board of Directors, Broome County Medical Directors |
| 2001-2005 | Medical Informatics, American Academy of Otolaryngology |
| 2001-2010 | Educational Policy Committee, Upstate Medical School |
| 2004-2010 | Ethics Committee, United Health Services Hospitals |
| 2006-2010 | Vice Chair Ethics Committee United Health Services Hospitals |
| 2001-2003 | Pharmacy and Therapeutics Committee, Lourdes Hospital |
| 2001-2002 | HIPAA Compliance Committee |
| 2001-2003 | Bioterrorism Task Force, Broome County, N.Y. |
| 2002-2003 | Medical Error Reduction Team, Lourdes Hospital |
| 2002-2003 | End of Life Task Force, Lourdes Hospital |
| 2004-2010 | Chair, Tumor Board, United Health Services |
| 2004-2010 | Oncology Committee, United Health Services |
| 2005-2010 | Co-Chair Transitional Life Care Team, United Health Services |
| 2005-2009 | Utilization Management Committee, United Health Services |
| 2005-2010 | Medical Staff Quality Assurance Comm., United Health Services |
| 2008-2011 | Board of Regional Advisors, American Cancer Society |

**Publications:**

1. Searching Among the Dead  - a novel – J. Dalton Hayes, M.D.; SMA Press, 2003

2. Doern, Notaro, Okasky, Vogenberg,  , **Hayes** –  Treating Sinusitis and Otitis Media, AON Monograph, 2001.

3. Doern, Okasky, Vogenberg,.., **Hayes** – Treating Bronchitis and CAP, AON Monograph, 2000.

4. Franzese, Nichols, **Hayes** – Midline Cervical Clefts.  ENT Journal 87:3; 166-168, March 2008.

5. Podoshin, Nodar, Hughes, Bauer, **Hayes.** – Long Term Histologic Study of a New Carbon-Carbon Ossicular Replacement Prosthesis. Otology and Neurotology. 9(5):366-375, Sept 1988

6. **Hayes**, Lochrem – Aspiration of a Nasal Airway: A Case Report and Principles of Management, Anesthesia 62:534-535, 1985.

7. Eliachar, Roberts, **Hayes** – The Sternohyoid Rotary Door Flap, Archives of Otolaryngology, Head and Neck Surgery 1987; 1094-1097.

8. Eliachar, Roberts, **Hayes**, Tucker – A Vented Laryngeal Stent with Phonatory and Pressure Relief Capability, Laryngoscope 97:1264-1269.

5

9. Eliachar, **Hayes** – <u>ENT Trama</u>, Chapter in "War Trauma", 1988 Springer
   Verlag, Berlin.

10. Kraus, **Hayes,** Tucker – <u>Vascular Ring Anomaly</u>, Head and Neck, March
      1990,  11:170-173

11. Sosulski, **Hayes,** Cicatricial Stenosis of the External Auditory Canal, ENT
Journal, 2010,   pending publication.

11. Approximately 50 articles in popular press on medical subjects.

12. More than 100 appearances on radio and TV on medical or healthcare
      economic subjects.


**Lectures Given:**

Hundreds of lectures given to lay public, university and professional audiences
with areas of expertise in:

| | |
|---|---|
| Antibiotics | Ethics |
| Steroids | Medical Economics |
| Antihistamines/Allergy | Pediatrics |
| Sinusology/Headaches | Hearing |
| Gastroesophageal reflux | Motivational/Inspirational Seminars |
| Death and Crime Scene Investigation | |

Dr. Hayes was ordained as a Preaching and Teaching Elder in 1975 and has
worked as a Supply Pastor throughout New York, Pennsylvania, and Ohio since
that time.

**Expert Testimony History for James D. Hayes**

1986 Testified in a rape trial in Cleveland, Ohio for the prosecution.

1989 Testified in a Medical Malpractice suit in Binghamton, N.Y. for the defendant, the State of New York.

Appr. 2004 Testified in a Medical Malpractice suit in Western Pennsylvania for the plaintiff.

2006 Itri v. Downey: Superior Court, Union County, N.J. Docket number 3576/06 – testified for the plaintiff.

2008  Testified in Broome County, New York Superior Court in a rape trial for the defendant.

2010 Deposed in a medical malpractice case in Broome County as Broome County Coroner, a non-party to the suit.

<u>**CERTIFICATION OF SERVICE AND MAILING**</u>

On May 28, 2010, ANTHONY A. LENZA, JR., ESQ., the attorney for plaintiff served a copy of the within Expert Witness Disclosure for James D. Hayes, II, M.D. by mail addressed to the following:

Martin J. McGreevy, LLC
Attn: Teresa Gierla, Esq.
1 Industrial Way West
West Ridge, Building A
Eatontown, NJ 07724
Attorneys for Defendant(s)
DAVID HYPPOLITE, M.D.

Ronan, Tuzzio & Giannone
Attn: Henry Butehorn, Esq.
4000 Route 66
Tinton Falls, NJ 07753-7308
Attorneys for Defendant(s)
RIVERVIEW MEDICAL CENTER

United States Attorney
Attn: Karen Shelton, Esq.
402 East State Street, Room 430
Trenton, NJ 08608
Attorneys for Defendant(s)
THE UNITED STATES OF AMERICA

Orlovsky, Moody, Schaaf & Gabrysiak
Attn: James Moody, Esq.
187 Highway 36
West Long Branch, NJ 07764
Attorneys for Defendant(s)
PARKER FAMILY HEALTH CENTER

Buckley & Theroux, LLC
Attn: Tess Kline, Esq.
932 State Road
Princeton, NJ 08540
Attorneys for Defendant(s)
STEPHANIE REYNOLDS, M.D., TREVOR
TALBERT, M.D., and EMERGENCY
PHYSICIAN ASSOCIATES NORTH JERSEY, PC

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment for contempt of Court.

CARL M. ERMAN, ESQ.
Attorney for Plaintiff

By: _____
ANTHONY A. LENZA, JR.